57 F.3d 1065
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 CMF VIRGINIA LAND, L.P., Plaintiff-Appellant,
v.
PIONEER FEDERAL SAVINGS BANK; PIONEER FINANCIAL
CORPORATION; PIONEER PROPERTIES, III, INCORPORATED;
RESOLUTION TRUST CORPORATION, as Receiver For Investors
Federal Savings Bank; Resolution Trust Corporation, in its
corporate capacity, Defendants-Appellees,
v.
Samuel H. WEST, Party In Interest.
 No. 94-1941.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 2, 1995.
Decided: June 16, 1995.
 
 ARGUED: Philip John Harvey, Shaw, Pittman, Potts & Trowbridge, Alexandria, VA, for Appellant. James Strother Crockett, Jr., Mays & Valentine, Richmond, VA, for Appellees. ON BRIEF: Thomas W. Mitchell, Shaw, Pittman, Potts & Trowbridge, Alexandria, VA, for Appellant. Sharon N. Horner, Mceachin & Gee, Richmond, VA, for Appellee Resolution Trust; Murray H. Wright, Barbara Ann Williams, Barbara P. Flanagan, Wright, Robinson, Mccammon, Osthimer & Tatum, Richmond, VA, for Appellees Pioneer Federal, et al.
 OPINION
 PER CURIAM:
 
 
 1
 CMF Virginia Land, L.P., the appellant, and the Resolution Trust Corporation (RTC), the appellee, entered into a contract on July 13, 1992, in which CMF agreed to purchase from the RTC several loans issued by a failed bank that had fallen into receivership. The purchase agreement expressly permitted the RTC, in its discretion, either to settle these loans with the debtor or to sell the loans to a third party. J.A. at 140-41. In the event that the RTC settled any of the loans, the contract provided that CMF would receive, in place of the actual loan, a credit equal to a previously designated value assigned to the loan (the "derived investment value"). If, however, the RTC sold any of the loans to a third party, CMF would receive a credit equal to the sale price. Id. at 138-39.
 
 
 2
 In August 1992, the RTC allowed the Freeport Trust, debtor to two of the loans CMF had agreed to purchase, to settle these loans for $6,000,000. A third party, Pioneer Federal Savings Bank, provided the financing for Freeport Trust's settlement of the loans, in exchange for which Freeport Trust agreed to assign the loans to Pioneer Federal. On September 10, 1992, pursuant to the purchase agreement, the RTC informed CMF that these two loans had been settled. On September 14-16, CMF and the RTC closed on the remaining loans that CMF had agreed to purchase, and the RTC credited CMF in the amount of $2,563,743, which had previously been designated as the "derived investment value" of the two loans in question.
 
 
 3
 CMF claimed below that the simultaneous "settlement" of the loans with Freeport Trust and "assignment" of the loans to Pioneer Federal, which had provided the financing for the settlement in the first place, was in actuality a "sale" of the loans to Pioneer Federal. If, as CMF alleged, the transaction amounted to a sale of the loans, CMF would have been entitled under the contract to a credit of $6,000,000, the full amount of the sale. The RTC's decision to credit CMF the amount of the derived investment value, CMF contended, amounted to a breach of contract.
 
 
 4
 The district court did not address the merits of CMF's claim, holding instead that CMF's failure to comply with the contract's express grievance procedure amounted to a waiver of CMF's claim. Id. at 27-28. Section 13.2 of the contract required CMF to notify the Escrow Agent in the event of a default by the RTC and to specify the grounds for its declaration of default, if the default occurred prior to closing. The RTC would then be given a chance to respond to the Escrow Agent, who would ultimately resolve the dispute. Id. at 157. Section 13.2 also provided that CMF "shall not be entitled to monetary damages" for defaults that occurred prior to closing, limiting CMF only to "its equitable rights." Id.
 
 
 5
 CMF concedes that it failed to file a declaration of default with the Escrow Agent. CMF also admits that it was required to file such a declaration under Section 13.2 of the contract. CMF's contention on appeal, as it was below, is that the RTC deliberately concealed the information necessary for CMF to make a reasoned judgment as to whether the RTC had defaulted on the purchase agreement. The district court rejected this claim, reasoning that CMF had sufficient information at closing to determine that the RTC may have been in default, even though the RTC did not provide CMF with the details of the financing arrangement between Freeport Trust and Pioneer Federal. Id. at 26.* The district court further concluded that CMF made the economic decision not to claim default, in order to retain the credit it received as a result of the settlement on the two loans.
 
 
 6
 Having heard argument in the case and considered the submissions of the parties, we agree with the conclusions reached by the district court and affirm on its reasoning. See id. at 26-28.
 
 AFFIRMED
 
 
 *
 Although the district court actually stated that CMF had sufficient information to make such a judgment "[a]t the time of the cut-off date," J.A. at 27, it is apparent from the context of this assertion and the court's ultimate conclusion, that the district court was referring in fact to the "closing date."